18-71840. And our next case on calendar, we have a case that's also submitted on the briefs, which I'll just say officially is submitted, I don't know how to say it though, Aguile Merizzi v. Rosen, 18-71840. That case is submitted. And we'll turn to the next case on calendar, which is Dietrich v. Boeing, 19-56409. In this case, each side will have 15 minutes. Good afternoon, Your Honor, and good morning, as the case may be. I'm Eric Wolf, I'm counsel for Boeing. I will try to reserve two minutes for rebuttal. I will go straight to the questions that you all sent to us ahead of the argument, which, you know, is always very beneficial that we know in advance what you all are thinking. The first question was whether you should hold this appeal in abeyance because of the Supreme Court's Baltimore climate change case, which is getting argued on Tuesday. And you should, because I think it's very likely, I can't say for sure, and I'll explain my hedging there. I think it's very likely it's going to answer the reviewability question here. And this court's decision in San Mateo, a cert petition was granted, I'm sorry, a cert petition was filed on the 5th of January. And if the Supreme Court reverses the Fourth Circuit, and personally, I think they're pretty likely to, but, you know, this is my own speculation. But if they reverse, then obviously what the court will do is grant the San Mateo petition and vacate and remand for a decision in conformance with the new decision from the Supreme Court. And counsel, I assume Boeing's view also is that if we decided this case in favor of your friend and the Supreme Court answered the cert question in the way you hope, that we'd get GVR too. We would insist on that, yes, your honor. So that's really why the only sensible thing to do is to wait and see what the Supreme Court does. Is it clear that the case before the Supreme Court is analogous to this one? Because in this one, the district court didn't discuss officer, anything about officers in the remand order. And that's different, I think, than what's before the Supreme Court. Am I right? That, yes, that is a little different. I don't think I let me go into sort of the differences because I can't say for certain that they're going to answer the question here, but I think they likely will. So the reason it really doesn't matter whether the district court talked about it is that the case is probably going to get resolved on the plain language of 1447, which asks whether the case was removed under 1442. Which this case was just like the case in the Supreme Court. And then the question is, well, you review the remand order and what does that mean? Review the order and the courts have split. Some say, well, reviewing the order means everything in the order. And some say, no, you parse out certain issues. You know, I think most most most predictors think the Supreme Court is going to say order means order and you get everything in there. That is a position of the United States. And this court itself, you know, speculated that may very well be what Supreme Court does in San Mateo. And let me just say we follow reply brief after San Mateo. And I just I missed it. I came out in May and we missed it. And obviously, if we'd seen it, we would have discussed it in the reply brief. But we were aware of the Baltimore case and we we dropped a footnote about that. So so I don't think the ultimate reasoning that we're going to get from the Supreme Court, which is going to focus on the meaning of order, it is going to tie into this question of whether the district court talked about it or not. The only the only little tiny bit of delay I can see is our question here is a procedural one about timeliness, whereas the question in the Baltimore case is when you have other grounds for removal. So there the oil companies have this federal common law theory of removal and they really want the Supreme Court to say that's reviewable. And they want them to say, you know, it's proper that the federal common law did provide that grounds for removal. Although the question presented says any issue. Right. Right. So so moving to that, moving to the second question that we had, where is the state court case right now? What's going on? Yeah. So so here's my understanding. And my friend can can fill it in. So no stay was granted. We asked for a stay. No stay was granted. This case was remanded in October of twenty nineteen and then sort of a year passes. And obviously a lot has happened in the last year and maybe it was covid related. I just don't know. But a year passes with nothing. And then a new motion comes in to get a preferential trial date because of the plaintiff's health. And that is going to get heard, I believe, later this month. If it's granted, you know, trial could be in a few months. But, you know, it depends on sort of the like whatever kind of facts come in about the condition of the plaintiff. Obviously, there are still the children who have claims. The prior motion for a preferential trial date was granted. All right. It was. It was. So my friend can speak to his own clients circumstances there. I think if we're held in advance and a trial date is set relatively quickly, we would likely ask for a stay to get sorted out whether the federal office removal was proper. You know, on the assumption the Supreme Court will likely rule in a few months and that will clear up removability. Hypothetically, hypothetically, in the absence of a stay. So if you have us hold this case and the Supreme Court takes all the way to June. And in the meantime, there's a trial in state court. What happens if the state court trial reaches a judgment while this case is still sitting here? I truly don't know the answer to that question, Your Honor. I think the legal answer has to be that the air on the remand undoes it all because that the right protected by 1442 is a federal right. And federal courts can enter orders to protect their own jurisdiction. I mean, we we we haven't run into this scenario. Typically, not that I'm aware of, because typically if you get to that kind of intersection point, that kind of crash point, somebody grants a stay. It would be reasonable for the state court perhaps to pick a date that might allow for the Supreme Court to render its decision. But I've never in that kind of game of chicken. I've never I don't I don't actually know the answer, but I think the answer has to be that if you have a federal right to have a federal court determine your issues, which is what federal officer is that that can't just be taken away by proceedings continuing in state court. I'm sorry, counsel. I would assume that if the judgment was rendered, let's say in the plaintiff's favor, that your client would appeal. And that would be an appeal to the Court of Appeals. And I don't know what the exact name of it is. They have different names. That's right. It's called the Intermediate Court someplace else is called something else. So at that point, the case wouldn't be in its final stages. Supreme Court comes down with a decision, say, that favors Boeing's view that could be presented to the state appellate court. Could it not? I suppose it could. It really is not for that court to to weigh in on federal officer removal. That's for this court. But it would. An appeal in state court would keep it from going final. So there would be no there would be no case would not be closed. I mean, correct. It would not be. It would not be. And I doubt seriously that the Supreme Court would. I don't know how fast the state appellate court work, but then work that fast. No, no. And I will note, I mean, this is really just kind of a footnote in the Baltimore case. There were motions for stay. Those were not granted. But but obviously the Supreme Court didn't believe it was mooting its own case by not granting a stay. So I would expect that, you know, if they agree that it's reviewable or removable and perhaps the Supreme Court believes it is reviewable, but ultimately not removable, which would be another reason not to grab a stay. But they did just for whatever it's worth. They did not grant stays in that case. So I'm going to move a little to the merits and I'm going to ask this question, too. I'd like you to address the question of whether the Lockheed Martin case, the Durham case where the issue was different. The issue in the Durham case was whether you ever reset the clock, not the standard for when you reset the clock. I'd like Boeing Boeing to discuss whether that implicitly or explicitly rejected the clear and certain standard that I think the fifth and tenth circuits have adopted. I might have the circuit numbers wrong. And whether on that issue, the Lockheed Martin case is binding on us or whether we're riding on a clean slate. So it can't be binding on you in favor of Harris because Harris preceded it. In fact, Lockheed Martin cites Harris, although Harris dealt with a different type of circumstance. Right. Several responses on that first. That the language that gets quoted out of out of Durham, sort of when you have sufficient facts to remove. I do not read that as announcing a standard. I read that as kind of a kind of a casual expression of, you know, here we're going to review what is sufficient. We would say is Harris. And it has to be my understanding. And Lockheed Martin was that there was no dispute that Lockheed Martin did, in fact, remove essentially immediately after seeing any basis under the federal officer statute and simply had not wanted to remove under the federal enclave tort exception. Correct. They because they couldn't get the consent of the other defendants. So they didn't think they could. But it's it's somewhat similar to our case that once you had the clear statement that sort of military products are involved, well, then they then they removed. And that's exactly what happened here. Well, it's similar to your case, if that's the standard. Yes, correct. Now, another reason why you might be a federal officer, it might be a little different is the federal officer is not subject to the well-pleaded complaint rule. So so if anything, I think Lockheed kind of goes out of its way to say that things are liberalized for the party using federal officer removal. And I think that has to favor us in terms of any determination of timeliness. There's there's no I mean, I mean, among the reasons Judge Kaczynski gives in the the opinion are to not benefit artful pleading. And that would be that's the same rationale cited in the courts that have adopted the the clear and certain standard. That's exactly right. And in in Harris, Judge McEwen for the court refers to not wanting to create a cottage industry and essentially artful pleading and removal litigation. And let me be clear about what what happened here, because, you know, it's our view that the district court did not appreciate just how much ambiguity there was. And if I could do it all over again, I would have put excerpts of record 1290 to 91. I would have just pasted that into the brief because that is the table where plaintiff has to identify what she is suing over. And it's a table that has a line for products. And for Boeing, there is no listed product. It just says premises. And what's critical about that, which the district court does not get right here, is that he worked at a commercial aviation facility, which would make sense for a premises claim. But you can't remove that because it's commercial. So in order to remove, it has to be a military product. What do we know about the military products? Well, if it's premises and it's Long Beach, that's the Douglas Corporation. And if it's going to be military, then then not including Hickman Air Force Base in Hawaii is just inexplicable. So I don't understand this argument because it seemed that there was there was discovery in both deposition testimony and military records about work on your predecessors aircraft, I guess, in California. Once that exists, why does it matter if it also happened in Hawaii? Because we need to know they're making a claim about that. And that's the missing link. That's what the district court does. But couldn't you remove just based on the military aircraft in California? I don't understand why you need to know if there's also Hawaii. Oh, no, we don't need to know that there's also Hawaii. What we need to know is that they are making a claim based on exposure from military aircraft. And that only became clear in the answers to interrogatories in April 2019. So, yes, they have some testimony. This is, oh, he worked on military aircraft. We need to know they're making a claim. And let me end with this because of my time is dwindling here that maybe we could have removed. This is why we cite the Roth case. Like there's a difference between you have enough to remove and you have so much clarity that the clock starts. And we didn't know they're making that claim. And it made sense to have a premises claim because he works at a commercial aviation facility. And in that table at 1290 to 91, it says premises claim. And he that's he worked at Douglas Aircraft, the commercial facility. So we need to know she's making that claim for the clock to start. We didn't know that until April. And this other stuff about, you know, maybe military, maybe not. I mean, that goes to, yes, maybe you could go ahead and remove. But the clock didn't start. That's the key point. The clock didn't start. And my clock is zero. So I will still give you a minute for rebuttal. Thank you. And thank you very much. Mr. Stock in the meantime. I think you're muted. Very sorry about that. Good afternoon, Your Honors. Tyler Stock for plaintiff and appellant. L.E. Connie Dietrich. If it may please the court. Also agree. Also begin with the advance issue. To a certain extent, I agree with defense counsel. I do believe that the court's decision in Baltimore will ultimately guide whether or not jurisdiction is proper here. But Baltimore is really on all fours with County of San Mateo. And in our opinion, both guys, the jurisdiction is not proper in this case. But there are two considerations that I think are important that both counsel against in advance. The first is our client's health. Miss Dietrich was admitted into hospice in late October. Between between the remand and sort of late summer, she had been undergoing immunotherapy that had been fairly effective. Unfortunately, that is no longer working for her. At this point, she is just on palliative care there. She has been consistently headed downhill. And in discussing with the case manager in this case, he believes that she's very, very near the end of her days as is. So we're all very sorry to hear that. Sure, are all of our sympathies. And I'm sure your friend, too. So very, very sorry to hear that. Thank you. So holding the case in advance risks mooting the issue of jurisdiction as a whole, potentially. Beyond that, though, I think it's important to realize that I don't believe I'm still recovering a bit from this sad news. But let me just ask what you just said, because would it be moot if she does pass away? Would that get rid of this issue? Wouldn't she have kids who would continue or something? Potentially. And I don't know that the court would hold on to jurisdiction until a wrongful death complaint is filed. Now, maybe this discussion would be enough for the court to do that, in which case that alleviates that issue to a certain degree. But I do think there's a second issue that's equally important in this instance, and I really don't think that the court needs to reach the jurisdiction issue in this case. Whether or not. Excuse me. For purposes of reviewing the attorney's fees order, this course, this court has undertaken de novo examination of whether the district court's decision on remand was ultimately correct. And in plaintiff's view, this is not a particularly close case. I think that once. Counsel, even even if you were correct in a practical sense, are resolving the who wins on the attorney's fees would resolve who's right on the merits. Even if I were to agree with you as a practical matter, that, though, can't inform our requirement to decide the jurisdiction issue. I mean, we in my view, we can't not decide the jurisdiction issue simply because as a practical matter, if we agreed with you on an attorney's fees order, we would be ruling as a practical matter in your favor on the removability issue. I don't see how we can avoid the jurisdiction issue. Understood. Seems that's a fairly common practice in other areas. Maybe not with this court. So I can understand the court's opinion. And I will back away from that argument. In that case, the only real concern is whether or not the case can proceed. In the meantime, if there is an advance. Stay right now. So nothing about our proceeding is preventing the case from proceeding in state court right now. Is that right? Correct. Correct. And we anticipate the hearing on our motion to reinstate preferences on the 21st. We anticipate a trial being set for May 21st. That would be 120 days out. So the timing is going to be close. Even if we do make it, even if she somehow survives all the way to trial, it will be close with the Supreme Court's decision. So an advance may actually be. Why? Why didn't it just go back to already being expedited? There is some confusion in the Superior Court in Los Angeles as to hand as to how to handle preference cases once they come back on remand. Some judges feel that you need to file essentially a brand new motion for preference. We obviously disagree with that, but that's where we stand with this case now because of COVID and all these things. The courts haven't been setting trial dates. The practical reality is this case is probably not going to trial for some quite some time. So plaintiffs are not vehemently opposed to an advance. We want the court to get it right ultimately. And ultimately, we feel that we're going to win on the merits either way. So I don't know that the court would like to hear any more discussion on the issue of whether or not this case should be appealable. It seems like if you could move to the merits issues, that would be great. I know Judge Bennett asked some questions that you might want to speak to. Thank you. Thank you. So the main issue that Bowen raises is what is the appropriate standard for when this second 30-day clock should begin?  And we believe that it's the very definition of a bright line standard. Not so much in the statement of sufficient evidence, but as bore out in the court's reasoning. Durham considered Harris explicitly in determining when the 30-day clock should start. It looked to the elements of federal officer removal. It must be a person within the meaning of the statute. It must be a causal nexus. And the defendant must be able to assert a colorable defense. The court held that to start the clock under Harris, Durham had to provide Lockheed with facts to support each one of those elements. But counsel, do you agree that in Durham, the issue the court was deciding was whether or not you restart the clock and that everybody conceded that if you do restart the clock, whatever the test was, it was met there? Yes, I do concede that. But I do also believe that the court was still looking to see when the clock starts. And it gave some guidance beyond what I just noted. And this is where it really gets into the bright line standard, especially in the context that we're discussing today. The court noted that until Durham revealed the particular aircraft that was at issue that he was claiming exposure to, the removal clock would not have started because Lockheed, like other government contractors, takes some actions that are covered by the defense on behalf of the government and other actions where it exercises discretion while working for the government. So in plaintiff's view, you have a highly specific standard. We have to give facts to support each element of the 1442 test for removal. We have to go beyond that and name a specific product or plane in this instance that the defendant can point to to make its tolerable defense. We believe that that standard balances the competing policy interests between encouraging and requiring removal as early as possible in order to avoid unfair advantage, delay, or waste of resources, while also recognizing that a defendant shouldn't be required to go out on a fact-finding mission. Is it your position that if we were to look, if we were to decide that Durham didn't establish this standard and that we were to look at the 5th and 10th circuits, again, if I have the circuits right, unequivocally clear and certain, is it your view that you meet that test, too? Absolutely. Absolutely. But I also think that that standard, if the reasoning behind it is taken too far, can become problematic in a government contractor-type case. Here, it's easy to see how the standard the Durham court applied would work. For instance, the district court did not find that Boeing was required to go out and search for Mr. Dietrich's military records on its own at the commencement of the case to determine what planes could be at issue or whether he was in the military at the time. But once those facts have come out in discovery, once plaintiffs have produced them, they're charged with understanding them in context of the complaint and the other discovery. If I understand Mr. Wolf's argument correctly, he's saying that even though there was discovery that said that these particular military aircraft were involved, that something further was needed to say that you were going to rely on the work on those aircraft. Can you respond to that argument? Yeah, that argument just, to me, seems to ignore all context with regard to plaintiff's complaint and the discovery that came out. You heard my colleague point to 1291 in the record. 1291 is a preliminary fact sheet that plaintiffs in asbestos litigation are required to produce along with the complaint. California, the rule behind that is the LASC case management standing order. It requires a preliminary fact sheet to be served with the complaint and expressly states that it should be used for informational purposes only.  It doesn't mean that when additional exposures are discovered through the course of discovery, if they aren't named specifically in the preliminary fact sheet, defendants can disregard them. So it seems to me that defense counsel wants to be able to essentially point to any kind of ambiguity whatsoever. And if there's any ambiguity, it should be able to ignore the rest of the facts in the case. Look, counsel, what I'm looking at, again, we were writing on a slate unconstrained by Durham the words of the statute, 1446B3, a copy of an amended pleading, motion, order, or other paper from which it may first be ascertained. And I think the common meaning of ascertained is pretty, pretty certain as opposed to having to go through lots of different pieces of paper and exercise some type of discretionary judgment. How does your view of the evidence here fit with looking at the word ascertained as a pretty definitive kind of standard? Sure. Two things. I would say that the Harris case counsels against such a strict interpretation. In Harris, the issue is whether or not one of the named defendants was, in fact, diverse for jurisdictional purposes. What happened was the case progressed. They weren't able to state where that person's residence was. They hadn't served them. It was getting close to trial, so the defendant sent a letter saying, hey, we want to stay. The plaintiff sent a letter back saying, we don't agree to any kind of stay in this case. And the Harris case found that the 30-day clock started upon receipt of that letter because it could essentially be inferred that they were abandoning their claims against this third defendant because of the timing issue. There's nothing clear and unequivocal in that letter that would indicate they were abandoning their claims against that defendant. And, in fact, they responded shortly after to say that they had no intention to abandon it. So while you do need to be able to ascertain it from the writings, you also have to exercise judgment in light of what is going on in the case and in context of the pleadings. In this case, as that applies to our facts, plaintiff's complaint separately alleges causes of action for negligence, breach of warranties, and premises owner-contractor liability. It specifically identifies Boeing as a product defendant and alleges that in various locations, including the state of California. And it gives them a specific time frame, 1948 to 1979. The work history sheet, which was provided on November 8th initially and November 28th later, makes it very clear that plaintiffs are alleging exposure to Boeing's aviation products from 1948 to 1979, that the exposure resulted as a result of her husband's work as an aviation mechanic and doing repair. And it goes on to give specific details that she was exposed to her husband, that Paul Dietrich's exposure was caused by aviation repair. Then, under a heading of household exposure to Paul Dietrich. I'm sorry, I think I better interrupt you. We have read the briefs, and unless my colleagues have further questions, you're over your time, so I think we better move on. Thank you. Any other questions? Not for me. Thank you, Judge Friedland. No, I don't have any additional questions. Okay, well, thank you, counsel. I actually think we have one minute that we're going to give you for rebuttal, so let's do that, please, now. I appreciate that. Just one quick point about Harris.  In Harris, they said that a defendant resided in Montana. And this court held that that was too much ambiguity to conclude that somebody was a citizen of Montana for purposes of diversity. I mean, that is significantly less ambiguity than occurs in this case, as to whether they're making claims about military products until the interrogatory was answered. Secondly, my co-counsel's... Is there any reason they wouldn't be making claims about military products once they say that he worked on military products? Absolutely. Absolutely, Your Honor. They don't want to be in federal court. They want to stay in state court. And that's the cat-and-mouse game that goes on. And I don't mean to diminish that there's a real serious injury here and a serious disease, but that cat-and-mouse game goes on all the time. And to some extent, I stand here a little bit like Br'er Rabbit, because if you say we had enough here to remove, that we had to remove that the clock started, then we'll remove much earlier. And this court will have validated that. But Harris explains that the better rule, the obviously more pragmatic policy choice, that it has to be clear so we don't have this cottage industry about removability. Thank you both sides for the helpful arguments in this difficult case. The case is submitted.
judges: Friedland, Ezra, Bennett